UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARCADIO GUAJARDO, | No. 2:13-cv-00274 DAD P |
| Petitioner, | |
| v. | ORDER |
| WARDEN, HIGH DESERT STATE PRISON, | |
| Respondent. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Therein petitioner presents a single claim challenging his 2011 judgment of conviction for assault with a deadly weapon due to alleged jury instruction error. (Dkt. No. 1.) Respondent has filed an answer. (Dkt. No 12.) Petitioner has not filed a traverse. Both parties have consented to Magistrate Judge jurisdiction over this action. See 28 U.S.C. § 636(c).

## BACKGROUND

On March 24, 2011, petitioner was convicted by a Sacramento County Superior Court jury of assault with a deadly weapon, in violation of California Penal Code § 245(a)(1).[1] The jury also

---

[1] Further references are to the California Penal Code unless otherwise specified.

1

found the enhancement allegation that petitioner personally used a deadly and dangerous weapon in the commission of that offense within the meaning of Penal Code §1192.7(c)(23) to be true. (Clerk's Transcript (hereinafter "CT"), Lodged Doc. No. 1, filed Apr. 25, 2013 (Dkt. No. 13) at 105.) The trial court further found that petitioner had suffered three prior serious felony convictions within the meaning of Penal Code §§ 667(b) to (i) and 1170.12. (Reporter's Transcript (hereinafter "RT") Lodged Doc. No. 2, filed Apr. 25, 2013 (Dkt. No. 13) at 265-66.) Petitioner was sentenced to an indeterminate term of 25 years to life in state prison. (CT at 141.)

On appeal petitioner argued that erroneous jury instructions given at his trial regarding self-defense deprived him of a fair trial. (Appellant's Opening Brief on Appeal, Lodged Doc. No. 4, filed Apr. 25, 2013 (Dkt. No. 13)) In an unpublished opinion, the California Court of Appeal for the Third Appellate District, rejected petitioner's arguments of instructional error and affirmed his judgment of conviction. (Lodged Doc. No. 7, filed Apr. 25, 2013 (Dkt. No. 13) hereinafter "Opinion"). In so ruling the state appellate court provided the following factual summary of the case:[2]

> On June 17, 2010, close friends Levi Moses and Mario Arnold were waiting to board a Sacramento Regional Transit light rail train at a station in downtown Sacramento. Moses, age 23, was five feet nine inches tall and weighed 150 pounds. When the train arrived, Arnold attempted to board at the same time as defendant, who was carrying his bicycle. Defendant was angry, and the two exchanged words. After they boarded, defendant struck Arnold with the bicycle and more words were exchanged. Arnold asked defendant what his problem was, and defendant called Arnold some derogatory names. Arnold walked away from defendant, toward the back of the train car.
>
> Moses boarded the train after defendant and walked past him. Defendant said some words to Moses and struck him with the bicycle. There had been no interaction between the three prior to boarding.
>
> After defendant hit Moses with the bicycle, Moses turned around and they "got a little loud." Moses did not threaten defendant, but he removed his backpack and threw it to the ground "just in case" there was an altercation. Moses raised his fists about waist level

---

[2] These facts as recited by the state appellate court are presumed true for purposes of this court's review under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), and the petitioner does not contend otherwise. See 28 U.S.C. § 2254(e)(1).

2

because defendant "was coming at" Moses "like he was getting ready to hit [Moses] or something."

Moses felt what he perceived to be a push, and he believed it was defendant who had pushed him. He had not seen anything in defendant's hand.

Moses backed up, and Arnold told him he had been stabbed. Moses was bleeding from the right side of his chest. Moses held his chest in disbelief and asked someone to retrieve his backpack. He and Arnold backed away from defendant without saying anything to him. Moses and Arnold left the train at the next stop. Defendant alighted at the same stop and rode away on the bicycle.

Moses was bleeding "pretty bad[ly]." Soon the police arrived and asked him what had happened. They called for an ambulance that arrived in 10 to 15 minutes. Moses had surgery for his wound, which took about three months to heal.

Moses explained the sequence of events depicted on a compact disc of video from the train car's security camera. Based on his memory and the video, Moses was sure that defendant was the person who had stabbed him.

Arnold, age 20, testified similarly to Moses. Arnold added that defendant had called him the "N-word" in their initial confrontation. Arnold did not threaten to beat up defendant. Arnold saw defendant hit Moses with his bicycle. Moses got mad and began arguing with defendant. Moses threw down his backpack, and defendant threw down his bicycle. Defendant moved toward Moses, who got into a defensive stance. Arnold never saw a knife in defendant's hand. Nor did Arnold see Moses get stabbed; he merely assumed from Moses's condition that he had been stabbed. Arnold and Moses moved away from defendant and got off the train at the next stop.

Sacramento City Police Officer Christopher Lenert received a radio broadcast regarding the assault. He and another officer arrived one minute later and spoke with Moses. Moses lifted his shirt, which was covered in blood, and showed Lenert the wound. After telling Moses to keep pressure on the wound, Lenert called the fire department. Moses described his assailant as a male Hispanic adult, approximately 45 to 55 years old, medium build, salt and pepper hair and mustache, wearing a white T-shirt and light-colored pants, with a white bandage on his right arm. Lenert broadcast that description.

Sacramento City Police Officer Edwin Asahara was assigned to investigate this matter. After viewing the security video and reading the offense report, Asahara prepared an incident bulletin that was disseminated to law enforcement officers within Sacramento County.

Six days after the stabbing, officers who worked in an area north of downtown Sacramento advised Officer Asahara to contact

3

> defendant. Defendant's bandage and backpack drew Asahara's attention. There were no bruises or scratches on defendant's face. When showed a photograph of him, taken from the train video, defendant stated that the photograph slightly resembled him but was not him. Defendant denied having been in a fight on the train.
>
> A search of defendant's residence revealed a bicycle consistent with the one held by the assailant who had stabbed Moses. Officer Asahara created a photographic array that included defendant's photograph. Moses viewed the array and chose two of the six individuals as most resembling the assailant. Defendant was one of the two. Then, without further prompting, Moses said his "best guess" was that the person other than defendant was the assailant. Arnold was unable to select anyone from the array.
>
> Sacramento County Sheriff's Officer Dustin Silva spoke with Arnold at the scene and gave Arnold a ride to the hospital. Arnold said a guy had gone out of his way to push his bicycle into Arnold as they were boarding the train. Arnold added that he had told the guy not to do it and had pushed the bicycle. Arnold said Moses also pushed defendant's bicycle and, suddenly, defendant had a knife in his hand. Defendant then stabbed Moses with the knife. Arnold did not claim defendant had used foul language or had thrown down his bicycle in an aggressive manner. Arnold said defendant had a folding knife with a blade about three inches long.

(Opinion at 2-5.)

Following the California Court of Appeal's affirmance of petitioner's judgment of conviction, a petition for review was filed on his behalf with the California Supreme Court. (Lodged Doc. No. 8, filed Apr. 25, 2013 (Dkt. No. 13).) The petition for review raised the same issues that were presented by petitioner on direct appeal, and it was summarily denied by the California Supreme Court. (Id. at 2, 9.) Petitioner did not attack his judgment of conviction by filing any habeas petition in state court. Petitioner filed the instant petition for federal habeas relief on February 4, 2013. (Dkt. No. 1.)

Petitioner's form habeas petition does not state any grounds for relief, but rather incorporates by reference the reply brief filed on his behalf in the California Court of Appeal in connection with his direct appeal. (Id.) Petitioner's pro se petition will therefore be construed as raising the same issue that he raised in state court on direct appeal. (See Dkt. No. 1 at 16-43.) The pending petition therefore presents one ground for federal habeas relief, namely, that the state trial court erred in instructing the jury regarding self-defense and thereby deprived petitioner of a

/////

meaningful opportunity to present a complete defense as guaranteed by the Sixth and Fourteenth Amendments.  (Dkt. No. 1 at 17.)

## STANDARDS GOVERNING HABEAS RELIEF UNDER THE AEDPA

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.  Thompson v. Runnels, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing Greene v. Fisher, ___ U.S. ___, 132 S. Ct. 38 (2011); Stanley v. Cullen, 633 F.3d 852, 859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606 F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced."  Marshall v. Rodgers, ___U.S.___,___,133 S. Ct. 1446, 1450 (2013) (citing Parker

v. Matthews, ___U.S.___, ___132 S. Ct. 2148, 2155 (2012). Nor may circuit precedent be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. Id. Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. Carey v. Musladin, 549 U.S. 70, 77 (2006).

  A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. Price v. Vincent, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3] Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 412. See also Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 562 U.S.___,___,131 S. Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and

---

[3] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." Stanley, 633 F.3d at 859 (quoting Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004)).

1 comprehended in existing law beyond any possibility for fairminded disagreement." Richter,131
2 S. Ct. at 786-87.

3       If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing
4 court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,
5 527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)
6 (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §
7 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering
8 de novo the constitutional issues raised.").

9       The court looks to the last reasoned state court decision as the basis for the state court
10 judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).
11 If the last reasoned state court decision adopts or substantially incorporates the reasoning from a
12 previous state court decision, this court may consider both decisions to ascertain the reasoning of
13 the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a
14 federal claim has been presented to a state court and the state court has denied relief, it may be
15 presumed that the state court adjudicated the claim on the merits in the absence of any indication
16 or state-law procedural principles to the contrary." Richter, 131 S. Ct. at 784-85. This
17 presumption may be overcome by a showing "there is reason to think some other explanation for
18 the state court's decision is more likely." Id. at 785 (citing Ylst v. Nunnemaker, 501 U.S. 797,
19 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims
20 but does not expressly address a federal claim, a federal habeas court must presume, subject to
21 rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___,
22 ___, 133 S. Ct. 1088, 1091 (2013).

23       Where the state court reaches a decision on the merits but provides no reasoning to
24 support its conclusion, a federal habeas court independently reviews the record to determine
25 whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.
26 Thompson, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo
27 review of the constitutional issue, but rather, the only method by which we can determine whether
28 a silent state court decision is objectively unreasonable." Himes, 336 F.3d at 853. Where no

1  reasoned decision is available, the habeas petitioner still has the burden of "showing there was no
2  reasonable basis for the state court to deny relief." Richter, 131 S. Ct. at 784.

3       A summary denial is presumed to be a denial on the merits of the petitioner's claims.
4  Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze
5  what the state court actually did when it issued a summary denial, it must review the state court
6  record to determine whether there was any "reasonable basis for the state court to deny relief."
7  Richter, 131 S. Ct. at 784. This court "must determine what arguments or theories . . . could have
8  supported, the state court's decision; and then it must ask whether it is possible fairminded jurists
9  could disagree that those arguments or theories are inconsistent with the holding in a prior
10 decision of [the Supreme] Court." Id. at 786. The petitioner bears "the burden to demonstrate
11 that 'there was no reasonable basis for the state court to deny relief.'" Walker v. Martel, 709 F.3d
12 925, 939 (9th Cir. 2013) (quoting Richter, 131 S. Ct. at 784).

13      When it is clear, however, that a state court has not reached the merits of a petitioner's
14 claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal
15 habeas court must review the claim de novo. Stanley, 633 F.3d at 860; Reynoso v. Giurbino, 462
16 F.3d 1099, 1109 (9th Cir. 2006); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

17 **DISCUSSION**

18 I. Claim - Instructional Error

19      Specifically, petitioner claims that the trial court's giving of two jury instructions
20 addressing the circumstances under which one has a right to act in self-defense deprived him of
21 the ability to present a complete defense to the charges brought against him, thereby violating his
22 constitutional right to due process and a fair trial. (Dkt. No 1 at 32, 38.) Petitioner argues that:
23 (1) the jury instruction regarding mutual combat or initial aggressor given by the trial court did
24 not apply to the facts of his case because he and the victim were not engaged in mutual combat;
25 and (2) that the trial court erred by instructing the jury on provocation since there was no
26 evidence introduced suggesting that petitioner had provoked a fight with the victim with the
27 intent to create an excuse to use force. Id. at 32-42.
28 /////

II.  Relevant Background

The jury at petitioner's trial was instructed in part that

> Some of these instructions may not apply depending on your finds about the facts of the case.  After you've decided what the facts are, follow the instructions that do apply to the facts as you find them.

(CT (Lodged Doc. No. 1) 1 at 90; RT (Lodged Doc. No. 2) at 222.)[4]  The jury was also instructed on the lesser included offense of simple assault[5] and that it was the prosecution that bore the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense.[6]  (CT at 96-99; RT at 233-35.)  Each of these jury instructions was given by the trial

---

[4] This language is part of the standard jury instruction designated as CALCRIM 200.

[5] See CALCRIM 915.

[6] Specifically, consistent with CALCRIM 3470, petitioner's jury was instructed as follows:

> Self-defense is a defense to Count One  and the lesser crime of simple assault.  The defendant is not guilty of that crime if he used force against the other person in lawful self-defense.  The defendant acted in lawful self-defense if:
>
> One, the defendant reasonably believed that he was in imminent danger of suffering bodily injury;
>
> Two, the defendant reasonably believed that the immediate use of force was necessary to defend against that danger and;
>
> Three, the defendant used no more force than was reasonably necessary to defend against that danger.
>
> Belief in future harm is not sufficient, no matter how great or how likely the harm is believed to be. The defendant must have believed there was an imminent danger of violence to himself.  The defendant's belief must have been reasonable and he must have acted because of that belief.  The defendant is only entitled to use that amount of force that a reasonable person would believe is necessary in the same situation.  If the defendant used more force than was reasonable, the defendant did not act in lawful self-defense.
>
> When deciding whether defendant's beliefs were reasonable, consider all the circumstances that were known to and appeared to the defendant and consider what a reasonable person in a similar situation with similar knowledge would have believed.  If the defendant's beliefs were reasonable, the danger does not need to have actually existed.

/////

court without objection. Finally, the jury was instructed as follows with respect to self-defense, mutual combat or initial aggressor, and provocation:

> A person who engages in mutual combat or who is the initial aggressor has the right to self-defense only if [¶] one, he actually and in good faith tries to stop fighting; [¶] two, he indicates by words or conduct to his opponent in a way that a reasonable person would understand that he wants to stop fighting; [¶] and three, he gives his opponent a chance to stop fighting.[¶] If a person meets these requirements, then he has a right to self-defense if the opponent continues to fight. [¶] A fight is a mutual combat when it began or continued by mutual consent or agreement. That agreement may be expressly stated or implied and must occur before the claim to self-defense arose. [¶] If you decide that the defendant started the fight using non-deadly force and the opponent responded with such sudden and deadly force that the defendant could not withdraw from the fight, then the defendant had the right to defend himself with deadly force and was not required to try to stop fighting.
>
> A person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force.

(CT at 99; RT at 235-36.)[7]

At the jury instruction conference, defense counsel objected to the trial court instructing the jury with the mutual combat/initial aggressor instruction, arguing that there was no interpretation of the evidence admitted at trial that would permit the jury to conclude that there

---

> The defendant's belief that he was threatened may be reasonable even if he relied on information that was not true. However, the defendant must actually and reasonably have believed that the information was true.
>
> The defendant is not required to retreat. He is entitled to stand his ground and defend himself, and if reasonably necessary, to pursue an assailant until the danger of bodily injury has passed. This is so even if safety could have been achieved by retreating.
>
> The People have the burden of proving beyond a reasonable doubt that the defendant did not act in lawful self-defense. If the People have not met this burden, you must find the defendant not guilty of Count One and the lesser crime of simple assault.

(RT 234-35; CT 96.)

[7] See CALCRIM 3471 and CALCRIM 3472.

10

was mutual combat between victim Moses and petitioner or that petitioner was the initial aggressor as to Moses. (RT at 196.) The trial court overruled the objection, finding that there was sufficient evidence admitted at trial to support the giving of the instruction, particularly since the instructions would make it clear to the jury that it was their duty to determine the facts of the case and then apply the law that applied to those facts in a manner consistent with the instructions. (Id. at 197.) Moreover, the trial court indicated that it would instruct on self-defense "as requested by the defense and as indicated by the evidence." (Id. at 195.) No objection was raised by defense counsel to the trial court's self-defense instruction. (Id. at 196.)

III. The State Appellate Court's Opinion

The California Court of Appeal rejected petitioner's argument that the mutual combat/initial aggressor jury instruction, CALCRIM 3471, did not apply given the evidence introduced at his trial. The state appellate court concluded that even if there was no evidence introduced suggesting mutual combat, there was ample evidence presented from which the jury could have determined that petitioner was the initial aggressor against Moses. (Opinion at 9) (noting the evidence that petitioner struck both Moses and Arnold with his bicycle before either of them acted aggressively toward petitioner). Finally, that court reasoned that there was no legitimate concern that the jury had applied the mutual combat language of the instruction. (Id. at 9-10.)

The California Court of Appeal also rejected petitioner's argument that there was no evidence introduced at trial supporting the giving of CALCRIM 3472, which instructed the jury in part that "[a] person does not have the right to self-defense if he or she provokes a fight or quarrel with the intent to create an excuse to use force." The state appellate court concluded that the prosecution had presented sufficient evidence at trial from which a reasonable jury could infer that petitioner intended to provoke a fight with Moses and his friend, Arnold. (Id. at 11-13.) In reaching this conclusion the state appellate court noted the evidence of petitioner's interaction with Moses and Arnold when he boarded the train from which the jury could, but was not required to, find that petitioner had provoked a fight so that he could use his knife to "defend"

/////

11

himself. (Id. at 12-13.) In light of this determination, the appellate court concluded that petitioner was not denied his due process rights to a fair trial and to present a defense. (Id. at 13.)

III. Analysis

In general, a challenge to jury instructions does not state a federal constitutional claim. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Engle v. Isaac, 456 U.S. 107, 119 (1982); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983). In order to warrant federal habeas relief, a challenged jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"' but must violate some due process right guaranteed by the fourteenth amendment." Cupp v. Naughten, 414 U.S. 141, 146 (1973). See also Estelle, 502 U.S. at 72 (holding that to find constitutional error, there must be a "'reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution") (quoting Boyde v. California, 494 U.S. 370, 380 (1990)); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). To prevail on such a claim petitioner must demonstrate "that an erroneous instruction 'so infected the entire trial that the resulting conviction violates due process.'" Prantil v. California, 843 F.2d 314, 317 (9th Cir. 1988) (quoting Darnell v. Swinney, 823 F.2d 299, 301 (9th Cir. 1987)). See also Middleton v. McNeil, 541 U.S. 433, 437 (2004) ("If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution."); Estelle, 502 U.S. at 72; Henderson v. Kibbe, 431 U.S. 145, 156-57 (1977). In making this determination, the challenged jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." Estelle, 502 U.S. at 72 (quoting Cupp, 414 U.S. at 14). See also Prantil, 843 F.2d at 317 (the habeas court must evaluate the challenged jury instructions "'in the context of the overall charge to the jury as a component of the entire trial process.'") (quoting Bashor v. Risley, 730 F.2d 1228, 1239 (9th Cir. 1984).

Even if constitutional instructional error has occurred, a petitioner is not entitled to federal habeas relief unless the error "in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict." Calderon v. Coleman, 525 U.S. 141, 147 (1998) (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). See also California v. Roy, 519

U.S. 2, 6 (1996); Cavitt v. Cullen, 728 F.3d 1000, 1010 (9th Cir. 2013), cert. denied ___U.S.___, 134 S. Ct. 1522 (2014).

Here, petitioner has failed to show that the trial court's jury instructions on self-defense deprived him of his right to a fair trial. After reviewing the record, this court agrees with the state appellate court's finding that the evidence adduced at trial supported the giving of both challenged instructions. With respect to the giving of CALCRIM 3471, based on the testimony presented at trial, petitioner's jury could have determined that petitioner was the initial aggressor and that he harbored no intent to withdraw. (See RT at 70-82, 129-139.) Both the victim, Moses, and his friend, Arnold, testified at trial that petitioner, after jostling with Arnold while boarding the train, instigated the confrontation by hitting them both with his bike as they were trying to get situated on the train. Petitioner's actions led to a verbal confrontation between the three, which culminated in petitioner's stabbing of Moses. That testimony by itself was sufficient to support a reasonable inference that petitioner was the initial aggressor as to Moses. See Thomas v. Lewis, No.1:11-CV-1037 LJO GSA HC, 2012 WL 169770. At *30 (E.D. Cal. Jan. 19, 2012) (rejecting a federal habeas challenge to the giving of CALCRIM 3471 where the state court properly found no constitutional instructional error because under one interpretation of the evidence the instruction applied and since if the jury decided the facts otherwise they were free to disregard the instruction).

Likewise, with respect to the giving of CALCRIM 3472, petitioner's jury could have reasonably relied on the same trial testimony to support the conclusion that petitioner provoked the confrontation with the intent to create an excuse to use force. Notably, both Moses and Arnold testified at trial that they only responded to petitioner verbally after he had hit them with his bike. Based on the totality of the evidence, the jury could have inferred from this testimony that petitioner provoked the confrontation in order to create an excuse to use force. See Baldwin v. Tampkins, No. ED CV 12-1599 PSG (RZ), 2013 WL 5548546, at *10 (C.D. Cal. Oct. 8, 2013) (denying habeas relief on a challenge to the giving of CALCRM 3472 where evidence was introduced at trial from which a jury could have inferred the petitioner provoked the confrontation

/////

13

1  in order to create an excuse to use self-defense and where the jury could have disregarded the
2  instruction if they agreed with petitioner's interpretation of the evidence).

3        Therefore, it cannot be said that the trial court deprived petitioner of his right to a fair trial
4  by instructing the jury with either CALCRIM 3471 or 3472.

5        Even assuming for the sake of argument that the jury instructions given at petitioner's trial
6  were not warranted by the evidence, petitioner was not deprived of his right to a fair trial because
7  those instructions did not in any way preclude the jury from finding that petitioner acted in self-
8  defense. Rather, the challenged instructions only informed the jury that petitioner could not
9  prevail on a claim that he acted in self-defense if they found certain specified circumstances to be
10 true. In his closing argument, petitioner's trial counsel took full advantage of the opportunity to
11 argue that the evidence presented at trial did not establish that those specified circumstances
12 existed and that, in fact, the evidence supported petitioner's claim that he acted in legitimate self-
13 defense. (RT at 208-20.)

14       Moreover, as noted above, the trial court instructed the jury that some of the instructions
15 given to them might not apply depending on the jury's findings about the facts of the case and
16 that they should, after deciding what the facts were, follow only those instructions that applied to
17 the facts as they found them. (CT at 90; RT at 222.) The jury is presumed to have followed this
18 instruction. Kansas v. Marsh, 548 U.S. 163, 179 (2006); Richardson v. Marsh, 481 U.S. 200, 211
19 (1987); Fields v. Brown, 503 F.3d 755, 782 (9th Cir.2007). Pursuant to this instruction, the jury
20 was free to disregard the self-defense instructions which petitioner challenges here if it found they
21 did not apply to the facts as the jury had found them to be. Thus, even if the giving of the
22 challenged instructions somehow constituted error, they certainly did preclude the jury from
23 finding that petitioner had acted in self-defense as he argued. Therefore, federal habeas relief is
24 not warranted because any such instructional error did not have a "substantial and injurious effect
25 or influence on the jury's verdict." Brecht, 507 U.S. at 637.

26       For all of the reasons set forth above, the rejection of petitioner's claim of jury instruction
27 error by the California Court of Appeal was neither contrary to, nor an unreasonable application
28 of, clearly established federal law.

**CONCLUSION**

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for writ of habeas corpus is denied;

2. This case is closed; and

3. The court declines to issue the certificate of appealability referenced in 28 U.S.C. § 2253.

Dated: June 13, 2014

_____
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

Dad1.habeas
guajardo13cv0274.hc.docx